UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

EAST END DEVELOPMENT, LLC,

                         Debtor.
-------------------------------------------------------------X
ALL SYSTEMS MAINTENANCE, INC., HUSBANDS FOR HIRE, INC. d/b/a ALL FLOORS AND INTERIORS, INTER-COUNTY MECHANICAL CORP., JPR2, INC., and WATER MILL BUILDING SUPPLY, INC., as representatives of the estate of East End Development, LLC,

                         Plaintiffs,

-against-

AMALGAMATED BANK, as Trustee of Longview Ultra Construction Loan Investment Fund f/k/a Longview Ultra I Construction Loan Investment Fund,

                         Defendant.
-------------------------------------------------------------X

Chapter 11
Case No.: 12-76181 (REG)

Adv. Pro. No. 13-08081

**AFFIDAVIT OF JAMES O'REILLY AS FIRST VICE PRESIDENT OF AMALGAMATED BANK AS TRUSTEE OF LONGVIEW ULTRA CONSTRUCTION LOAN INVESTMENT FUND F/K/A LONGVIEW ULTRA 1 CONSTRUCTION LOAN INVESTMENT FUND IN SUPPORT OF MOTION TO DISMISS**

STATE OF NEW YORK    )
                              ) ss:
COUNTY OF NASSAU    )

        JAMES O'REILLY, being duly sworn, deposes and says:

        1.    I am the First Vice President of Amalgamated Bank as Trustee of Longview Ultra Construction Loan Investment Fund f/k/a Longview Ultra 1 Construction Loan Investment Fund

(the "Lender"), the first priority secured creditor of East End Development, LLC, a New York limited liability company, the above-referenced debtor and debtor in possession ("Debtor"). I submit this affidavit in support of Lender's Motion to Dismiss the Adversary Complaint filed by mechanic's lienors All Systems Maintenance, Inc., Husbands for Hire, Inc. d/b/a All Floors and Interiors, Inter-County Mechanical Corp., JPR2, Inc., and Water Mill Building Supply, Inc. (collectively, the "Mechanic's Lienors") on behalf of Debtor (ECF Docket No. 139; the "Complaint"). I am fully familiar with the facts set forth herein.

## Preliminary Statement

2.  As the Court is aware from the prior filings in Debtor's bankruptcy, Amalgamated has lent, in principal alone, an excess of $30 million to Debtor.[1] Amalgamated has also agreed to lend another $7.3 million to the Debtor so that the Debtor's real estate condominium project may be completed. Amalgamated has at all times since entering into the Loan Agreements (as defined and described below) in 2007 remained committed to the completion and sale of Debtor's property.

3.  The Mechanic's Lienors have now filed a frivolous Complaint which is purportedly on behalf of the Debtor, but is instead a transparent effort to benefit the Mechanic's Lienors by raising allegations against Lender which are false and duplicative to the claims that the Mechanic's Lienors are presently pursuing (with Lender's consent to relief from the bankruptcy stay) in State Court. When stripped of all of its blustery allegations, the Complaint in essence alleges that Lender has breached the Loan Agreements with Debtor by purportedly (a) failing to fund requisitions in connection with the subject development project prior to Debtor's default, and (b)

---

[1] As of the October 12, 2012 petition date of Debtor's bankruptcy case, Debtor was indebted to Lender in the amount aggregating $32,239,461.13.

then wrongly declaring that Debtor was in default under the Loan Agreements.

4. These allegations are simply wrong and belied by documentary evidence which demonstrates that Lender timely and completely paid in full each of the 27 requisitions made by Debtor in connection with the project until (and even after) the time that Debtor indisputably defaulted under the terms of the Loan Agreements in or about July, 2009 by, among other things, failing to repay the Loan by its maturity date. As a result, the allegations in the Complaint that Lender has breached the Loan Agreements by failing to fund or somehow concocting a default of the Debtor where none existed are facially frivolous and disproven by documentary evidence, including Debtor's own admissions in Exhibit E to its Third Amended Disclosure Statement dated May 8, 2013 (the "Disclosure Statement"), as described below.[2]

5. As also analyzed in the accompanying Memorandum of Law in support of this Motion, the claims in the Complaint each also fail as a matter of law for several independent reasons, including, but not limited to, the fact that the claims relate to trust monies under New York's Lien Law advanced by Lender or which the Mechanic's Lienors claim should have been advanced. These monies, I am advised, would not be a part of the Debtor's estate. As a result, it is clear that the Complaint is not aimed at asserting any legitimate claims on behalf of Debtor, but to assert claims that advance the interest of the Mechanic's Lienors.

6. For all these reasons and those described in the accompanying Memorandum of Law, it is respectfully requested that Lender's Motion to Dismiss be granted and the Complaint be dismissed in its entirety.

---

2 Although the Complaint advances 7 separate causes of action, each of the claims is essentially a recasting of the breach of contract cause of action.

## Background

**THE LOAN DOCUMENTS**

**A.     The Senior Loan, Note and Mortgage**

7.     On or about March 16, 2007, Lender extended a loan to the Debtor in the principal amount of $2,500,000.00 (the "Loan"). The Loan is evidenced by a Note in the principal amount of $2,500,000.00 executed and delivered by the Debtor to Lender (the "Note") and is secured by a first priority mortgage encumbering the Property, executed and delivered by the Debtor to Lender on or about March 16, 2007 (the "Gap Mortgage").

8.     On or about March 13, 2007, pursuant to a written assignment, Lender became the owner and holder of certain notes, bonds or obligations in the aggregate amount of $1.1 million and the mortgages on the Property securing said indebtedness (the "Assignment of Prior Mortgages"). Pursuant to the Assignment of Prior Mortgages, Lender took by assignment a certain Consolidation, Extension and Modification Agreement dated August 18, 2003 that had formed a single lien encumbering the Property by consolidating, extending, and modifying two prior mortgages: (i) a certain Mortgage dated March 20, 1996 in the principal sum of $897,689.69; and (ii) a certain Mortgage dated August 18, 2003 securing indebtedness in the principal amount of $279,222.74 (collectively the "Prior Mortgages").

9.     To evidence the total indebtedness to Lender that was secured by the Prior Mortgages and the Gap Mortgage, on March 16, 2007, the Debtor executed, acknowledged and delivered to Lender an Amended and Restated Note in the total principal amount of $3,600,000.00 (the "Senior Note"). A copy of the Senior Note is annexed as Exhibit A. To secure the payment of the Senior Note and its obligations under other documents relating to the Senior Loan, the Debtor, as

mortgagor, executed and delivered to Lender, as mortgagee, a certain Consolidated, Amended and Restated Senior Loan Mortgage, Assignment of Leases and Rents and Security Agreement (the "Senior Mortgage"). Amongst other conditions, rights, duties and privileges as fully set forth therein, the Senior Mortgage consolidated, amended, and restated in their entirety the Prior Mortgages and the Gap Mortgage in order to form a single lien encumbering the Property in the principal amount of $3.6 million.

10. The sums loaned pursuant to the Senior Note, and secured by the aforesaid Senior Mortgage were made pursuant to a Senior Loan Agreement dated March 16, 2007 entered into by and between Lender and Debtor (the "Senior Loan Agreement"). A copy of the Senior Loan Agreement is annexed as Exhibit B.

**B.    The Building Loan, Note and Mortgage**

11. On or about March 16, 2007, Lender extended a building loan to the Debtor in the principal amount of $16,347,825.00 (the "Building Loan") as evidenced by that certain Building Loan Note dated March 16, 2007 executed and delivered by the Debtor to Lender in the original principal amount of $16,347,825.00 (the "Building Note"). A copy of the Building Note is annexed as Exhibit C. To secure the payment of the Building Loan and its obligations under other loan documents relating to the Building Loan, on or about March 16, 2007, the Debtor, as mortgagor, executed and delivered to Lender, as mortgagee, a certain Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement (the "Building Mortgage"). Amongst other conditions, rights, duties and privileges as fully set forth therein, the Building Mortgage encumbered the Property.

12. The sums loaned pursuant to the aforesaid Building Note, and secured by the aforesaid Building Mortgage were made pursuant to a Building Loan Agreement dated March 16, 2007 entered into by and between Lender and Debtor (the "Building Loan Agreement"). A copy of the Building Loan Agreement is annexed as Exhibit D.

C.  **The Project Loan, Note and Mortgage**

13. On or about March 16, 2007, Lender extended a separate loan to the Debtor in the principal amount of $8,052,175.00 (the "Project Loan"), as evidenced by that certain Project Loan Note dated March 16, 2007, executed and delivered by Debtor to Lender in the principal amount of $8,052,175.00 (the "Project Note"). A copy of the Project Note is annexed as Exhibit E.

14. To secure the payment of the Project Loan and its obligations under other loan documents related to the Project Loan, on or about March 16, 2007, the Debtor as mortgagor, executed and delivered to Lender, as mortgagee, a certain Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement (the "Project Mortgage"). Amongst other conditions, rights, duties and privileges as fully set forth therein, the Project Mortgage encumbered the Property.

15. The sums loaned pursuant to the aforesaid Project Note, and secured by the aforesaid Project Mortgage were made pursuant to a Project Loan Agreement dated March 16, 2007 entered into by and between the Lender and the Debtor (the "Project Loan Agreement"). A copy of the Project Loan Agreement is annexed as Exhibit F.

16. The Project Loan Agreement, Senior Loan Agreement, Building Loan Agreement (collectively the "Loan Agreements"), Project Note, Senior Note, Building Note (collectively, the "Notes"), Project Mortgage, Senior Mortgage, Building Mortgage (collectively, the "Mortgages")

and all other documents and instruments evidencing, securing and/or relating to the loans described above will be collectively referred to hereinafter as the "Loan Documents."

**D.      Lender Fully Funded All Requisitions**

17.      The Complaint alleges that Lender violated the Agreement by failing to fund requisitions in connection with the project. The Complaint alleges that as a result of these purported funding failures, the Mechanic's Lienors (and other sub-contractors) were not paid and filed liens causing the Debtor to go into default. The Complaint also seemingly alleges that the Lender was somehow obligated to continue funding after Debtor's default. These allegations are completely false and are easily rebutted by dispositive documentary evidence.

18.      Initially, Debtor's own filings in the bankruptcy case confirm that Lender made all required advances prior to Debtor's default. Attached as Exhibit G here is Exhibit E to Debtor's Disclosure Statement, dated May 8, 2013, demonstrating that Lender made payment in full on all of the listed 27 requisitions from the loan inception until the last advance by Lender on August 3, 2009, a period of time after which (as described below) Debtor was in default.

19.      The payments listed on Exhibit E of Debtor's Disclosure Statement are also confirmed by Lender's business records which match these requisition requests and Lender's responsive advances. Thus, the documentary evidence and Debtor's admissions in its bankruptcy case prove that the allegations in the Complaint that Lender improperly failed to fund pursuant to the terms of the Loan Agreements and therefore purportedly created Debtor's default are simply wrong.

**E.      Debtor's Defaults Under the Loan Documents**

20.      Despite the unsupported allegations to the contrary in the Complaint, Debtor's default under the Loan Documents cannot be seriously disputed.

21. The Debtor failed to comply with the terms and conditions of the Loan Documents and defaulted thereunder by, among other things, failing to repay the outstanding principal balance of the Loans, together with all other amounts due under the Loan Documents, on or before April 1, 2009, the date the Loans matured, and all amounts due under the Loan Documents became immediately due and owing. Debtor further failed to comply with the terms and conditions of the Loan Documents and defaulted thereunder by, among other things, failing to remove that certain mechanic's lien filed by RLW4 Construction and A & F Fire Protection Co., Inc. against the Property.

22. Annexed as Exhibit H is a Notice of Default dated July 29, 2009 which was duly served by Lender in accordance with the Loan Documents. As stated on page 2 of the Notice of Default, Debtor was notified that Events of Default had occurred under the Loan Documents based upon (a) failure of Debtor to repay the outstanding principal balance of the Note and all other sums due under the Loan Agreements on or before the April 1, 2009 Maturity Date, and (b) failure of the Debtor to comply with the covenants set forth in Section 4.1.21 of the Building Loan Agreement, relating to the filed mechanic's liens. Neither Debtor nor the guarantors of the Loans cured the defaults.

23. Debtor further failed to comply with the terms and conditions of the Loan Documents and defaulted thereunder by, among other things, allowing the commercial general liability insurance and excess liability insurance required by the terms of Section 5.1.1(a)(iii)(A) of the Building Loan Agreement to lapse as of October 15, 2009 and by failing and refusing to renew or otherwise procure the requisite insurance coverage for additional periods. By letter dated October 23, 2009, Lender notified Debtor of this additional default under the Loan Documents. A copy of this subsequent

notice letter is annexed hereto as Exhibit I. Debtor also and failed to cure the insurance default. As a result, Lender was forced to obtain and incur the cost of the requisite insurance coverage.

24. Thereafter, upon information and belief, in late 2009 and in 2010, numerous mechanic's liens were recorded in the Office of the Suffolk County Clerk against the Property, including, but not limited to, that:

a. On or about December 15, 2009, Squires, Pierson & Sons, Inc. filed a Notice Under Mechanic's Lien Law in the amount of $94,239.47, and filed an extension of said lien on or about November 19, 2010;

b. On or about December 9, 2009, Prate Installations, Inc. filed a Notice Under Mechanic's Lien Law in the amount of $236,148.76;

c. On or about January 21, 2010, Avon Electrical Supplies, a division of WESCO Distribution, Inc., filed a Notice Under Mechanic's Lien Law in the amount of $31,776.48;

d. On or about March 15, 2010, Graybar Electric Company filed a Notice Under Mechanic's Lien Law in the amount of $40,436.83;

e. On or about May 4, 2010, B & G Electrical Contractors of LI Inc. filed a Notice Under Mechanic's Lien Law in the amount of $394,580.00;

f. On or about July 21, 2010, Iron Horse Development & Management Inc. filed a Notice Under Mechanic's Lien Law in the amount of $515,629.00;

g. On or about November 9, 2009, Thyssenkrupp Elevator Corporation filed a Notice Under Mechanic's Lien Law in the amount of $416,880.00, and filed an extension of said lien on or about August 23, 2010;

h. On or about December 31, 2009, JPR2, Inc. filed a Notice Under Mechanic's Lien Law in the amount of $842,072.05;

i. On or about December 3, 2009, Allied Building Products Corp. filed a Notice Under Mechanic's Lien Law in the amount of $8,870.33;

j. On or about October 31, 2009, Premier Sheet Metal, Inc. filed a Notice Under Mechanic's Lien Law in the amount of $68,840.00, and filed an extension of said lien on September 13, 2010;

k.  On or about February 26, 2009, A & F Fire Protection Co. Inc. filed a Notice Under Mechanic's Lien Law in the amount of $25,000.00;

l.  On or about September 29, 2009, Oldcastle Precast, Inc. filed a Notice Under Mechanic's Lien Law in the amount of $84,000.00;

m.  On or about October 5, 2009, A Richmond County Stucco & Stone Contractors LLC filed a Notice Under Mechanic's Lien Law in the amount of $102,359.81;

n.  On or about October 9, 2009, Inter-County Mechanical Corp. filed a Notice Under Mechanic's Lien Law in the amount of $510,241.00;

o.  On or about October 15, 2009, Pristine Pool Construction Corp. filed a Notice Under Mechanic's Lien Law in the amount of $71,703.00;

p.  On or about October 16, 2009, World Cup Concrete Corp. filed a Notice Under Mechanic's Lien Law in the amount of $60,438.00;

q.  On or about October 20, 2009, Husband for Hire Inc. DBA All Floors & Interiors filed a Notice Under Mechanic's Lien Law in the amount of $103,151.45;

r.  On or about October 21, 2009, Water Mill Building Supply, Inc. filed a Notice Under Mechanic's Lien Law in the amount of $213,949.00;

s.  On or about October 2, 2009, All Systems Maintenance Inc. filed a Notice Under Mechanic's Lien Law in the amount of $247,794.88, and filed an extension of said lien on or about October 1, 2010;

t.  On or about November 16, 2009, Island Insulation Services, LLC filed a Notice Under Mechanic's Lien Law in the amount of $97,000.00, and filed an extension of said lien on or about November 12, 2010;

u.  On or about January 25, 2010, Long Island Precast, Inc. filed a Notice Under Mechanic's Lien Law in the amount of $41,474.92, and filed an extension of said lien on or about January 5, 2011;

v.  On or about October 14, 2009, Southampton Brick & Tile, LLC filed a Notice Under Mechanic's Lien Law in the amount of $94,340.33, and filed an extension of said lien on or about September 29, 2010;

w.  On or about October 14, 2009, Island Custom Stairs Inc. filed a Notice Under Mechanic's Lien Law in the amount of $11,790.15, and filed an extension of said lien on or about October 6, 2010;

x. On or about October 30, 2009, Bridgehampton Steel & Welding Inc. filed a Notice Under Mechanic's Lien Law in the amount of $76,092.90, and filed an extension of said lien on or about October 12, 2010;

y. On or about November 9, 2010, United Rentals (North America), Inc. filed a Notice Under Mechanic's Lien Law in the amount of $18,505.97, and filed an extension of said lien on or about October 22, 2010;

z. On or about November 19, 2009, Copper Crafts Inc. filed a Notice Under Mechanic's Lien Law in the amount of $3,084.00;

aa. On or about November 24, 2009, Kleet Lumber Co., Inc. filed a Notice Under Mechanic's Lien Law in the amount of $25,870.48; and

bb. On or about December 4, 2009, LPC Inc. filed a Notice Under Mechanic's Lien Law in the amount of $12,230.62, and filed an extension of said lien on or about November 18, 2010.

25. These liens and the failure of Debtor to remove them as of record constituted further defaults under the terms and conditions of the Loan Documents as set forth in Section 4.2.2 of each of the Loan Agreements.

26. Contrary to the allegations in the Complaint, once an Event of Default occurred, Lender had no further obligation to make any further advances pursuant to Section 9.2(d) of the Building Loan Agreement, although Lender could choose to do so without waiving any rights or default: "make Advances or parts of Advances thereafter without thereby waiving the right to demand payment of the Building Loan Note, without becoming liable to make any other or further Advances, and without affecting the validity of or enforceability of the Building Loan Documents." *See* Building Loan Agreement (Exhibit D) at § 9.2.

27. Lender in fact made an advance after the date of the July 29, 2009 Notice of Default (Exhibit I). That advance is listed as requisition number 27 on Debtor's Disclosure Statement (Exhibit G), paid on August 3, 2009. Lender had the right to make this payment without waiving the

defaults or causing a modification of the Building Loan Agreement in accordance with §9.2 thereof. Lender also sent an express notification of the same (and reserving all rights to enforce the defaults) to Debtor on August 3, 2009 at the time of the payment. A copy of this notice is annexed as Exhibit K.

28. Under the circumstances, it is unclear how the Mechanic's Lienors allege in the Complaint that Debtor was purportedly not in default. Thereafter, contrary to the unsupported statements in the Complaint, Lender did not take over control of the Debtor, but instead entered into lengthy workout negotiations in accordance with its continued commitment to see the project completed and Debtor's property developed.[3] When those negotiations reached a final impasse, Lender commenced a foreclosure action against the Debtor on August 18, 2011, to foreclose on the Mortgages, in the Supreme Court of the State of New York, County of Suffolk, in an action titled *Amalgamated Bank, as Trustee of Longview Ultra Construction Loan Investment Fund v. East End Development, LLC et al.*, Index No. 32574/11.

29. As of the October 1, 2012 commencement of Debtor's bankruptcy case, the Debtor was indebted to the Lender in the amount aggregating not less than $32,239,461.13.

---

[3] Lender is not an insider of the Debtor, does not hold any equity interest in the Debtor, is not a director or officer of the Debtor, is not in control of the Debtor, and is not a general partner or a managing member of the Debtor.

## Conclusion

22. In light of the foregoing, Lender requests that the Court grant the relief requested by this Motion and dismiss the Complaint in its entirety, along with such other and further relief as the Court deems just and proper.

Amalgamated Bank as Trustee of Longview Ultra Construction Loan Investment Fund (f/k/a Longview Ultra 1 Construction Loan Investment Fund

By: *[signature]*
James O'Reilly, First Vice President

Sworn to before me this
28 day of June, 2013

*[signature]*
NOTARY PUBLIC

PHYLLIS HALPERN
NOTARY PUBLIC, State of New York
No. 4847763
Qualified in Nassau County
Commission Expires March 30, 2013

845661