UNITED STATED BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

EAST END DEVELOPMENT, LLC,

        Debtor.
-------------------------------------------------------------------x
POST-EFFECTIVE DATE COMMITTEE OF
THE ESTATE OF EAST END DEVELOPMENT, LLC,


        Plaintiffs,

  -against-

AMALGAMATED BANK, as Trustee of Longview
Ultra Construction Loan Investment Fund f/k/a
Longview Ultra I Construction Loan Investment Fund,

        Defendant.
-------------------------------------------------------------------x

Chapter 11
Case No. 12-76181-REG




Adv. Pro. No. 13-08081-REG

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION PURSUANT TO RULES 26 AND 37 OF THE FEDERAL RULES OF CIVIL PROCEDURE, E.D.N.Y. LOCAL BANKRUPTCY RULE 7007-1, 18 U.S.C. § 201(B), AND 11 U.S.C. § 105 SEEKING THE ENTRY OF AN ORDER: (A) STRIKING DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES DUE TO ITS WILLFUL FAILURE TO COMPLY WITH DISCOVERY IN GOOD FAITH AND AWARDING ATTORNEYS' FEES AND COSTS IN CONNECTION THEREWITH, OR IN THE ALTERNATIVE, (B) IN LIMINE AND TO PRECLUDE EVIDENCE AT TRIAL THAT WOULD SUPPORT DEFENSES RAISED BY THE DEFENDANT**

---

**LaMonica Herbst & Maniscalco, LLP**
*Counsel to Post-Effective Date Committee of the estate of East End Development, LLC*
3305 Jerusalem Avenue
Wantagh, New York 11793
Joseph S. Maniscalco, Esq.
Rachel P. Stoian, Esq.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 2

THE ANSWER SHOULD BE STRICKEN FOR WILLFUL NON-COMPLIANCE................... 2

A.    The Defendant's Willful Noncompliance with Document Discovery Must be Sanctioned................................................................................................................ 6

B.    The Defendant's Conduct with Respect to Wines and RLW4 Should be Sanctioned................................................................................................................ 9

C.    The Plaintiff is Entitled to Attorneys' Fees and Costs............................................... 12

CONCLUSION.................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                        **Pages**

Boulos v. Cato, No. 87 Civ. 2985 (CSH), 1988 U.S. Dist. LEXIS 6161 (S.D.N.Y. June 28, 1988) .................................................................................................................... 13

Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp., 24 Misc. 3d 1222(A), 2009 N.Y. Misc. LEXIS 1908 (N.Y. Sup. July 17, 2009) .......................... 8

Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs., 02 Civ. 9151 (KMW)(HBP), 2003 U.S. Dist. LEXIS 19247 (S.D.N.Y. Oct. 20, 2003) .......................................... 3

Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444 (2d Cir. 2013) ....................................... 5

In re Barnholdt, 74 B.R. 760 (Bankr. N.D.N.Y. 1987) ............................................................ 4, 5

Labarbera v. Absolute Trucking, Inc., CV 08-4581 (DRH) (AKT), 2009 U.S. Dist. LEXIS 70901 (E.D.N.Y. Aug. 12, 2009) ..................................................................... 3

New York v. Solvent Chem. Co., 166 F.R.D. 284 (W.D.N.Y. 1996) ....................................... 12

Nippon Fire & Marine Ins. Co., Ltd. v. MV Egasco Star, 94 Civ. 6813 (DC), 1996 U.S. Dist. LEXIS 1783 (S.D.N.Y. Feb. 20, 1996) ............................................................. 6

Rahman v. Seung Min Park (In re Seung Min Park), Case No. 09-78622-dte, 2011 Bankr. LEXIS 1339 (Bankr. E.D.N.Y. Apr. 8, 2011) ............................................................ 6

S. New England Tel. Co. v. Global NAPS Inc., 624 F.3d 123 (2d Cir. 2010) ........................... 5

Starbrite Waterproofing Co., Inc. v. Aim Constr. & Contracting Corp., 164 F.R.D. 378 (S.D.N.Y. 1996) .......................................................................................................... 5

Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199 (E.D.N.Y. 2007) ........................................... 3

Thomas v. City of New York, 293 F.R.D. 498 (S.D.N.Y. 2013) .............................................. 12

**Statutes**

18 U.S.C. § 1512(b) .................................................................................................................. 11

18 U.S.C. § 201(b) ................................................................................................................ 1, 11

FED. R. CIV. P. 26(b) ................................................................................................................... 2

FED. R. CIV. P. 26(e)(1) ............................................................................................................... 2

FED. R. CIV. P. 37(a)(4) ............................................................................................................... 3

FED. R. CIV. P. 37(b)(2) ............................................................................................................... 4

FED. R. CIV. P. 37(c)(1) ............................................................................................................... 4

Federal Rule 37(a)(5) ................................................................................................................ 12

Plaintiff Post-Effective Date Committee (the "Plaintiff" or "Committee") of the Estate of East End Development, LLC (the "Debtor"), by its counsel, LaMonica Herbst & Maniscalco, LLP, submits this memorandum of law in support of its motion (the "Motion") for entry of an Order, pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure (the "Federal Rules"), E.D.N.Y. Local Bankruptcy Rule 7007-1, 18 U.S.C. § 201(b), and section 105 of Title 11 of the United States Code (the "Bankruptcy Code"): (a) striking Defendant's Answer and affirmative defenses due to its willful failure to comply with discovery in good faith and awarding attorneys' fees and costs in connection therewith, or in the alternative, (b) in limine and to preclude evidence at trial that would support defenses raised by the Defendant.

## PRELIMINARY STATEMENT

This adversary proceeding was commenced to remedy a substantial and overarching injustice by Amalgamated over the Debtor and the Sag Harbor Project, as defined in the accompanying Affirmation of Joseph S. Maniscalco in Support of the Motion. Based on the evidence, there can be no doubt that Amalgamated engaged in a course of conduct to thwart the discovery process and disregard our system of justice. Amalgamated actually guided the Debtor's bankruptcy filing and came to this Court with an emergency DIP financing proposal and a heightened sense of urgency. This created a great deal of smoke in the beginning of the case, and the Mechanics Lienors, without evidence, had no ability to stop the Amalgamated freight train. This strategy has worked well for Amalgamated.

In the context of this Adversary Proceeding, Amalgamated's contumacious behavior has reached its pinnacle, primarily through the repeated and deliberate failure to turn over documents in its possession, and through its influence over a key non-party witness. As demonstrated in the Affirmation, Amalgamated must be held accountable for its actions. It is only through this

Court's power that Amalgamated can be stopped in its tracks.

The discovery sought by the Plaintiff is material and pertinent to the claims and defenses asserted in this adversary proceeding. In view of Amalgamated's conduct, the Plaintiff has been prevented from properly preparing for trial or filing a dispositive motion. As a consequence, the Committee requests the entry of an Order: (a) striking Defendant's Answer and affirmative defenses due to its willful failure to comply with discovery in good faith and awarding attorneys' fees and costs in connection therewith, or in the alternative, (b) <u>in</u> <u>limine</u> and to preclude evidence at trial that would support defenses raised by the Defendant.

## BACKGROUND

The relevant background facts are set forth in the accompanying Affirmation of Joseph S. Maniscalco, Esq. dated July 6, 2015. All terms not defined herein shall be ascribed the definition given in the Affirmation.

## THE ANSWER SHOULD BE STRICKEN FOR WILLFUL NON-COMPLIANCE

The Federal Rules set forth the rules and guidelines applicable to this adversary proceeding. In particular, Federal Rule 26(b) provides, in relevant part, that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

FED. R. CIV. P. 26(b). Federal Rule 26 further requires that

> A party who has made a disclosure under Rule 26(a)–or who has responded to an interrogatory, request for production, or request for admission–must supplement or correct its disclosure or response:
>
> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

FED. R. CIV. P. 26(e)(1).

Federal Rule 34 permits a party to seek document discovery within the scope of Federal Rule 26(b) and directs that party to whom such a request is made "respond in writing within 30 days of being served." FED. R. CIV. P. 34(a) & (b). "It is well established that by failing to respond or object to a discovery request in a timely manner, a party waives any objection which may have been available." Labarbera v. Absolute Trucking, Inc., CV 08-4581 (DRH) (AKT), 2009 U.S. Dist. LEXIS 70901, at *3 (E.D.N.Y. Aug. 12, 2009) (citations omitted). Indeed, "[a]ny other result would completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences." Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs., 02 Civ. 9151 (KMW)(HBP), 2003 U.S. Dist. LEXIS 19247, at *2 (S.D.N.Y. Oct. 20, 2003) (quotation, alteration, and citation omitted).

Additionally, Federal Rule 26(b)(5) requires that if information is withheld on the basis of privilege, the party withholding such information must expressly claim such privilege and describe the documents being withheld. FED. R. CIV. P. 26(b)(5)(A). Thus, "[f]ailing to include sufficiently descriptive information may result in a finding that the privilege has not been established. . . . Moreover, failure to timely provide a privilege log may operate as a waiver." Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199, 235–38 (E.D.N.Y. 2007) (citations omitted) (finding party failed to establish attorney work product doctrine protected disputed documents and directing that those documents be produced).

Federal Rule 37(a)(4) provides, in pertinent part, that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Federal Rule 37(c)(1) further provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

FED. R. CIV. P. 37(c)(1). The sanctions available under Federal Rule 37(b)(2) include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2).

The court has "broad discretionary power" to impose sanctions upon a party for failure to comply with the legitimate discovery requests of its adversary. In re Barnholdt, 74 B.R. 760, 763 (Bankr. N.D.N.Y. 1987). In exercising its discretion, the Court should consider the dissuasive effect an order may have upon the party at fault in the present case, and the impact upon discovery in other pending litigation. Id. at 763. "The Court must scrutinize the manner and extent of the discovery request, the degree of fault which the party complained of rightly bears for the failure to comply, and whether noncompliance follows prior court involvement in the

discovery process." Id. at 763–64. Federal Rule 37 provides the Court with a variety of sanctions, including striking a pleading. Striking a non-compliant party's pleading is justified when a party has evidenced "bad faith, willfulness, or gross negligence with respect to a discovery request, or where there has been a total failure to answer." Id. at 764; Starbrite Waterproofing Co., Inc. v. Aim Constr. & Contracting Corp., 164 F.R.D. 378, 381 (S.D.N.Y. 1996) (striking defendants' answer and precluding them from presenting evidencing where defendants flouted their obligations under the Federal Rules, ignored their obligations to respond to plaintiff's document requests and interrogatories and ignored plaintiff's counsel's telephone calls and at least one letter inquiring about the same). Federal Rule 37 sanctions are intended prevent a party from benefiting from its failure to comply, and to deter such conduct.

In evaluating appropriate sanctions under Federal Rule 37, the Second Circuit has delineated the following factors: "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance, and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned." Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 451 (2d Cir. 2013) (quotation and citation omitted). Because Federal Rule 37

> requires only that the district court's orders be "just," however, and because the district court has "wide discretion in imposing sanctions under Rule 37," . . . these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion.

S. New England Tel. Co. v. Global NAPS Inc., 624 F.3d 123, 144 (2d Cir. 2010) (citations omitted).

Where a party fails to produce documents as ordered by the court and has obfuscated the plaintiff's attempts to seek discovery, the court can enter an order striking the defendant's answer. See Nippon Fire & Marine Ins. Co., Ltd. v. MV Egasco Star, 94 Civ. 6813 (DC), 1996

U.S. Dist. LEXIS 1783, *4–7 (S.D.N.Y. Feb. 20, 1996) (finding that the failure of the defendants to comply with the court's order requiring discovery, or confirm that the defendants had made an adequate search for the documents, warranted the court striking their answer); see also Rahman v. Seung Min Park (In re Seung Min Park), Case No. 09-78622-dte, 2011 Bankr. LEXIS 1339, at *19–20 (Bankr. E.D.N.Y. Apr. 8, 2011) (describing the Court's authority to strike a defendant's answer due to the failure to produce documents).

## A.    The Defendant's Willful Noncompliance with Document Discovery Must be Sanctioned

Here, as amply demonstrated in the Affirmation, the Defendant has willfully failed to produce documents responsive to Plaintiff's First Request or the Freel EBT Requests, and the Defendant has failed to provide a valid basis for its lack of responsiveness. By not even responding to Plaintiff's First Request for almost seven (7) months, the Defendant waived all objections contained in Amalgamated's First Response, including those with respect to privilege because no privilege log accompanied the response. Indeed, the Defendant's responses are improper, untimely, and unsupported.

Despite repeated demand, the Defendant has withheld crucial documents from the Plaintiff that are central to the issues in this Adversary Proceeding, even after this Court admonished the Defendant at the final pretrial conference in this action to produce documents responsive to the Plaintiff's requests. Although the Defendant begrudgingly produced additional documents, those documents did not arrive until March 20 and 25, 2015, on the eve of trial, and again on June 10, 2015, two months after trial was scheduled to commence. Even these additional documents were not fully responsive to the Plaintiff's requests, meaning the Defendant has been noncompliant with its discovery obligations for approximately eighteen (18) months. With trial set for July 21 and 22, 2015, a sanction less severe than striking the

Defendant's Answer would not be efficacious as the Plaintiff has been unduly prejudiced by the Defendant's unwillingness to timely produce relevant documents. At a minimum, in the event this Court determines that striking the Defendant's Answer is not the appropriate sanction, this Court should preclude the Defendant from introducing evidence to support its defenses and to oppose the Plaintiff's claims which evidence has not been heretofore produced to the Plaintiff.

In particular, it is the Plaintiff's position that the Defendant cannot rely on the Loan Agreements and the protections afforded it therein due to its own failure to abide by the terms and conditions of the Loan Agreements from their very inception. The Plaintiff has repeatedly requested documents that would substantiate the permissibility of the Developer's Draws and Ferry Road Payment, both of which served to place the Debtor in a precarious financial position from the inception of the Loans, and neither of which are permitted by the Loan Agreements themselves. No documents have been forthcoming. In the event this Court declines to strike the Defendant's Answer, the Plaintiff submits that this Court should preclude the Defendant from presenting any evidence to support its position that the Developer's Draws and Ferry Road Payment were permissible under the Loan Agreements. At a minimum, an adverse inference should be drawn from the Defendant's failure to produce any documents to substantiate the permissibility of the Developer's Draws and the Ferry Road Payment.

The Plaintiff has also asserted that the Alleged Default was fabricated because the term of the Loans had been extended to October 2009 and, accordingly, the Defendant's failure to honor its funding obligation under the Loan Agreements subsequent to issuance of the Alleged Default constitutes a breach of those Loan Agreements. Despite repeated requests for documents relating to the Debtor's extension requests and the Defendant's responses thereto, the Defendant has only belatedly produced some documents, all of which support Plaintiff's position in this regard. The

Defendant has failed to produce internal notes or emails regarding CMS's monthly review of the construction progress and the date by which completion was anticipated, and the Defendant has not produce any evidence to refute the Debtor's testimony that a meeting was held during Spring 2009 at which representatives of the Defendant agreed to extend the term of the Loans to permit completion of construction. Accordingly, in the event this Court declines to strike the Answer, the Defendant should be precluded from asserting any defense that the Debtor's loan extension requests were not granted. As a minimum, an adverse inference should be drawn with respect to the Defendant's argument that the term of the Loans was never extended.

It is the Plaintiff's contention that the Defendant did not have sufficient capital to honor its funding obligation to the Debtor under the Loan Agreements and the Defendant has not produced any documents to refute this contention. Although James Freel testified on behalf of the Defendant that the Defendant had sufficient capital to fully fund the Loans, and all of the loans in its portfolio, the Defendant has not provided any documentation to sustain the truth of this testimony, despite repeated requests. As such, in the event this Court declines to strike the Answer, the Defendant should be precluded from introducing evidence to refute the Plaintiff's contention that the Defendant was unable to honor its funding obligations, and this Court should take judicial notice of the liquidity crisis effecting financial institutions at the time of the Alleged Default. See <u>Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.</u>, 24 Misc. 3d 1222(A), 2009 N.Y. Misc. LEXIS 1908, at *16 n.4 (N.Y. Sup. July 17, 2009) (taking judicial notice of liquidity crisis and widespread panic in the banking industry).

Most egregious, the Defendant has failed to produce documents relevant to these issues, and others, that the Plaintiff has obtained from third parties, but that were certainly in the Defendant's possession, custody, or control. For example, the Defendant never produced a copy

of the Unfunded Requisition, which was most assuredly transmitted to it upon its execution, or a copy of the GRS Report, which was emailed to James O'Reilly, a Senior Vice President of Amalgamated, on April 22, 2010, which report recommends that the Unfunded Requisition be paid. The Defendant has never explained these failures, and has not sought to remedy them by producing the requested documents. Moreover, the Defendant has persistently argued that it funded all requisitions in full. See O'Reilly Affidavit at ¶¶ 17–18. According, in this particular regard, in the event this Court declines to strike the Defendant's Answer, the Defendant should be precluded from asserting that it funded all requisitions in full. At a minimum, this Court should draw an adverse inference from Defendant's failure to produce these documents.

The foregoing are mere examples of the Defendant's bad faith conduct in response to the Plaintiff's valid discovery requests, which conduct has been willful, thereby warranting the striking of the Defendant's Answer and affirmative defenses. Alternatively, this Court should preclude the Defendant from introducing evidence to support its defense which evidence has not heretofore been produced to the Plaintiff, and draw an adverse inference with respect to the Defendant's defenses.

**B.      The Defendant's Conduct with Respect to Wines and RLW4 Should be Sanctioned**

In addition to the failing to properly and timely respond to Plaintiff's document requests, the Defendant appears to have directed its counsel to represent Wines and RLW4, a key fact witness in this Adversary Proceeding. It is undisputed that Wines and RLW4 had asserted certain cross-claims against the Defendant in State Court, alleging that the Sag Harbor Project had failed due to the Defendant's failure to honor its funding obligations to the Debtor, which cross-claims remained outstanding at the time that the Defendant, through its subsidiary 21 Water, purchased RLW4's claim against the Debtor just prior to the bankruptcy filing. It is further undisputed that,

in the context of purchasing RLW4's claim, Joseph LoMonaco, the Defendant's representative, advised Wines of the imminent bankruptcy filing and the fact that the Defendant intended to have RLW4 retained to complete the Sag Harbor Project, which ultimately occurred. After Wines testified during his Bankruptcy Rule 2004 examination that the budget annexed to the DIP Financing motion was not generated by RLW4 and that he estimated the cost to complete to be $5 million, not the $7.3 million sought, Wines and RLW4 retained new counsel – the same counsel as the Defendant in this action. Wines has now changed his mind with respect to the allegations contained in his cross-claims against the Defendant, but cannot pinpoint what lead to the change of tune.

The Plaintiff requested documents relating to the Defendant's relationship with RLW4 directly from the Defendant and from Wines. However, neither party produced responsive documents. Notably, neither the Defendant nor Wines properly asserted any objections to these requests, but simply ignored the requests. In particular, of the Defendant, the Plaintiff requested, among other things, documents reflecting the dismissal or resolution of Wines's and RLW4's cross-claims against the Defendant, and copies of contracts between RLW4 and the Defendant, or any affiliated entity or subsidiary. These documents were not produced. Meanwhile, of Wines and RLW4, the Plaintiff requested copies of contracts between RLW4 and Edifice, and a copy of the retainer agreement with Westerman Ball Ederer Miller Zucker & Sharfstein, LLP. These documents were not produced. The Plaintiff had also requested production of email communications between Wines and the Defendant, but the email communications relating to the Sag Harbor Project produced by Wines covered the period prior to May 2008 and after September 2009, leaving the crucial time period unaccounted for.  The impropriety of counsel to

the Defendant acting as counsel to Wines and RLW4 has been repeatedly highlighted by the Plaintiff, but the Defendant has persisted in this improper course of action.

Federal law provides that bribing witness is a felony.[1] Specifically, 18 U.S.C. § 201(b) provides

Whoever–

. . .

> (3) directly or indirectly, corruptly gives, <u>offers</u>, or <u>promises</u> anything of value to any person, or offers or promises such person to give anything of value to any other person or entity, with intent to influence the testimony under oath or affirmation of such first-mentioned person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or with intent to influence such person to absent himself therefrom;

. . .

> shall be fined under this title or not more than three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

18 U.S.C. § 201(b) (emphasis added); <u>see</u> 18 U.S.C. § 1512(b).

Aside from the criminal nature of witness bribery, courts have routinely held that such acts are sanctionable under the Federal Rules, New York law, and the court's inherent power in civil litigation. Courts in this circuit as well as others have held that,

> the payment of a sum of money to a witness to testify in a particular way; the payment of money to prevent a witness' attendance at a trial; <u>the payment of money to a witness to make him "sympathetic" with the party expecting to call him: these are all payments which are absolutely indefensible and which are really included in the general definition of subornation of perjury</u>. The payment of a sum of money to a witness to "tell the truth" is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true.

---

[1] The Committee is not asserting a claim for bribery.

New York v. Solvent Chem. Co., 166 F.R.D. 284, 290 (W.D.N.Y. 1996) (quotation and citation omitted) (emphasis in original); see Thomas v. City of New York, 293 F.R.D. 498, 505 (S.D.N.Y. 2013) (highlighting impropriety of paying fact witness in exchange for favorable testimony and ultimately vacating jury verdict).

Here, as detailed above and in the Affirmation, the Defendant appears to have made promises and offered services to Wines and RLW4 in exchange for favorable testimony and willful noncompliance with the Plaintiff's discovery demands. The Defendant had its subsidiary purchase RLW4's claim prior to the bankruptcy filing with the promise that RLW4 would be retained in the bankruptcy to complete the Sag Harbor Project, and later had its own counsel represent Wines and RLW4 as a witness in this action. Meanwhile, both the Defendant and Wines have failed to respond to Plaintiff's requests for documents which would either establish an improper witness relationship between the two or perhaps lend credence to the Defendant's assertion that there is nothing improper about the relationship.

In light of the severity of these actions and the prejudice caused to the Plaintiff, the Plaintiff respectfully submits that striking the Defendant's Answer is the appropriate sanction. In the event this Court declines to strike the Defendant's Answer, then an adverse inference should be drawn with respect to the relationship between the Defendant and RLW4.

### C.   The Plaintiff is Entitled to Attorneys' Fees and Costs

Federal Rule 37(a)(5) provides that, in the event a Federal Rule 37 motion is granted,

> or if the disclosure is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

FED. R. CIV. P. 37(a)(5). A court need not find that the Defendant's conduct rises to the level of "deliberate and willful" to award expenses to the Plaintiff. See Boulos v. Cato, No. 87 Civ. 2985

(CSH), 1988 U.S. Dist. LEXIS 6161, at *3 (S.D.N.Y. June 28, 1988). Rather, the shift of expenses "is <u>mandatory</u> unless opposition was substantially justified or because other circumstances make an award of expenses unjust." <u>Id.</u> at *3–4 (emphasis added).

As set forth more fully in the Affirmation, Plaintiff attempted in good faith to obtain the discovery sought prior to filing this Motion, and even attempted to resolve this discovery dispute in the context of its mediation with the Defendant. Notwithstanding the Plaintiff's efforts, the Defendant failed to comply with their discovery obligations by not turning over documents, including, most egregiously, documents in its possession that Plaintiff obtained from third parties. Accordingly, the Defendant should be required to pay Plaintiff's reasonable expenses incurred in filing the Motion and in seeking to compel compliance from the Defendant prior to filing the Motion, including their attorneys' fees and costs, in an amount believed to be not less than $50,000.00.

## CONCLUSION

The Defendant has forfeited its right to have its defenses decided on the merits. Clear and convincing evidence establishes that the Defendant willfully evaded its discovery obligations and set in motion a scheme calculated to interfere with this Court's ability to impartially adjudicate this litigation. As a result of Amalgamated's conduct, the Committee has been irreparably prejudiced.

The Committee respectfully requests that the Defendant's Answer be stricken and judgment be entered in favor of the Committee. This is an appropriate remedy and one that is both necessary and justified in this case due to the willful nature of the Defendant's conduct in discovery, the fact that a lesser sanction would not be efficacious in light of the imminence of trial, the fact that the Defendant has been in breach of its discovery obligations for approximately

eighteen months, and the fact that the Defendant has been warned that it may be sanctioned due to its noncompliance. In the event this Court declines to strike the Defendant's Answer, the Committee submits that the Defendant should be precluded from introducing evidence in support of its defenses. At a minimum, an adverse inference should be drawn against the Defendant and the defenses it has put forward in this action. The Committee further submits that the Defendant should be required to pay Plaintiff's reasonable expenses incurred in filing the Motion and in seeking to compel compliance from the Defendant prior to filing the Motion, including their attorneys' fees and costs.

**WHEREFORE,** based upon the foregoing, the Committee respectfully requests entry of an Order: (a) striking Defendant's Answer and affirmative defenses due to its willful failure to comply with discovery in good faith and awarding attorneys' fees and costs in connection therewith, or in the alternative, (b) <u>in limine</u> and to preclude evidence at trial that would support defenses raised by the Defendant, drawing an adverse inference at the trial, (c) awarding expenses, attorneys' fees, and costs to the Committee, and (d) granting such other, further and different relief as this Court may deem just and proper.

Dated: Wantagh, New York
July 6, 2015

    **LaMONICA HERBST & MANISCALCO, LLP**
    Attorneys for Plaintiff Post-Effective Date Committee

By:   *s/ Joseph S. Maniscalco*
      Joseph S. Maniscalco, Esq.
      Rachel P. Stoian, Esq.
      3305 Jerusalem Avenue
      Wantagh, New York 11793
      Telephone: (516) 826-6500

M:\Documents\Company\Cases\East End Development\Adv Pro\Amalgamated\Motion to Strike\Memo of Law Final.doc